IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 18-cv-03165-PAB-SKC

DELMART E.J.M. VREELAND, II,

        Plaintiff,

v.

DESIREE VIGIL,
THEODORE L. LAURENCE,
JAMMIE FELLHAUER,
LINDA PARO,
VANESSA CARSON,
LISA HANKS,
LINDSAY GOUTY,
DOCTOR MAUL,
MOUNTAIN PEAK UROLOGY, P.C.,
CHRISTOPHER HARRIGAN,
JENNIFER HARRIGAN,
ASHLEY REEDER,
CARLEY DAVIES,
BRANDY R. KNESKI,
CORRECTIONAL HEALTH PARTNERS, INC.,
HALL & EVANS LLC,
ANDREW RINGLE,
LAURA PEARSON,
KRISTIN A. RUIZ, and
JULIE TOLLESON,

        Defendants.

_____

# ORDER
_____

    This matter is before the Court on Defendant Correctional Health Partners'

Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 243], State

Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No.

249],[1] "MPU Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) C.R.S. § 13-20-602" [Docket No. 240],[2] and Defendants Hall and Evans, LLC., Andrew Ringel and Laura Pearson's Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 245].  Correctional Health Partners ("CHP") moves to dismiss all of plaintiff's claims against CHP.  Docket No. 243 at 1.  MPU Defendants move to dismiss all of plaintiff's claims against them.  Docket No. 240 at 2.  Similarly, H&E Defendants[3] move to dismiss all of plaintiff's claims against them.  Docket No. 245 at 1.  State Defendants move to dismiss all but one of plaintiff's claims against them.  Docket No. 249 at 2.  Plaintiff's responses to all four motions to dismiss were due February 1, 2022.  Docket No. 295.  No responses have been filed.

## I. BACKGROUND[4]

Plaintiff was a prisoner in the Colorado Department of Corrections ("CDOC") housed at the Arkansas Valley Correctional Facility ("AVCF") throughout the course of the events described in his complaint.  Docket No. 234 at 8, ¶ 1.  Plaintiff filed this lawsuit on December 10, 2018 due to a delay in medical care after an examination at

---

[1] "State Defendants" refers collectively to Desiree Vigil, Theodore Laurence, Jammie Fellhauer, Linda Paro, Vanessa Carson, Lisa Hanks, Lindsay Gouty, "Doctor Maul", Kristin A. Ruiz, and Julie Tolleson.  Docket No. 249 at 1.
[2] "MPU Defendants" refers collectively to Mountain Peaks Urology, P.C. ("MPU"), Christopher Harrigan ("Dr. Harrigan"), Jennifer Harrigan, Ashley Reeder, Carley Davis, and Brandy R. Kneski.  Docket No. 240 at 1-2.
[3] "H&E Defendants" refers collectively to Hall and Evans, LLC ("Hall & Evans"), Andrew Ringle, and Laura Pearson.  Docket No. 245 at 1.
[4] The Court assumes that the allegations in plaintiff's complaint are true in considering the motion to dismiss.  *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

AVCF medical unit by Theodore Laurence, a CDOC physician's assisstant, on May 18, 2018.  Docket No. 1; Docket No. 234 at 4, 8-9, ¶ 1-4.

Laurence diagnosed plaintiff with a "[b]enign cyst" on his lower body.  Docket No. 234 at 9, ¶ 4.  Laurence ordered that an ultrasound be conducted on the cyst within 30 days and for plaintiff to be provided with pain medication for 90 days.  *Id.*, ¶ 5.  An ultrasound was conducted on June 22, 2018 and the results were sent to Laurence on June 25, 2018.  *Id.*, ¶¶ 6-7.  At the direction of Dr. Maul, the Chief Medical Officer at the CDOC, *id.* at 4, Laurence made an entry on plaintiff's chart ordering that plaintiff have a "specialist/surgery urology consultation" within 30 days of June 27, 2018.  *Id.*, ¶ 7.

On July 23, 2018, plaintiff learned through Dr. Maul that the examination on May 18 and the order for a consultation on June 27 were made at the request of CHP, Hall & Evans, attorney Andrew Ringle, and attorney Laura Pearson through Dr. Maul for the purpose of gathering evidence in a separate case, *Vreeland v. Tiona et al.*, 17-cv-01580-PAB-SKC (the "*Tiona* Case"), in which the H&E Defendants were representing CHP against plaintiff.  *Id.* at 9-10, ¶¶ 9-10.

Plaintiff did not receive a consultation until January 31, 2019, after filing this lawsuit.  *Id.* at 14, ¶¶ 32-33.  Plaintiff was in pain while waiting for his consultation.  *Id.* at 11, ¶ 17.  Plaintiff's supply of pain medication was "about to expire" in July, *id.*, ¶ 14, and he claims he was without pain medication from approximately August 21, 2018 until January 2019.  *See id.* at 11, 12, 14, ¶¶ 14, 17, 21, 32-33.  Desiree Vigil, a CDOC employee, *id.* at 4, told plaintiff his consultation would occur in July 2018 and that he would be given pain medication immediately.  *Id.* at 11, ¶ 14.  Plaintiff informed Vigil that

3

he was in pain on several occasions by filing formal grievances and by speaking to her directly.  *Id.* at 10-11, 12-13, ¶¶ 13-14, 20-28.  Plaintiff informed Laurence that he was in severe pain.  *Id.* at 10, 11, ¶¶ 12, 17.   Plaintiff also told Fellhauer, a CDOC nurse, *id.* at 4, of the pain he was in three times and each time she told plaintiff that the consultation would take place in two weeks and that Laurence would give plaintiff pain medication.  *Id.* at 12, ¶ 19.

Plaintiff filed this action on December 10, 2018.  *Id.* at 13, ¶ 29.  On January 14, 2019, Linda Paro, a CDOC medical scheduler, *id.* at 4, contacted MPU to schedule a consultation for plaintiff.  *Id.* at 14, ¶ 32.  Plaintiff was taken to see Dr. Harrigan, an M.D. at MPU, *id.* at 5, for a consultation at Dr. Harrigan's office on January 31, 2019.  *Id.*, ¶ 33.  In the consultation, Dr. Harrigan performed a scrotal examination on plaintiff, which caused plaintiff extreme pain.  *Id.*, ¶ 35.  Dr. Harrigan was aware of plaintiff's pain, "but did not care."  *Id.* at 15, ¶ 36.  Dr. Harrigan recommended plaintiff undergo surgery to remove spermatoceles that Dr. Harrigan had described previously as plaintiff's benign cyst.  *Id.*, ¶ 37.  Plaintiff was in "severe pain" for two weeks following the consultation.  *Id.*, ¶ 36.

On February 21, 2019, plaintiff was told he would have surgery on February 22, 2019.  *Id.*, ¶¶ 37-38.   On February 22, 2019 at 7:15 am, plaintiff was taken to the Arkansas Valley Surgery Center.  *Id.*, ¶ 39-40.  Plaintiff learned no surgery had been scheduled for that day, and he had to wait until 2:30 p.m. to see if he could be added to the end of Dr. Harrigan's normal schedule.  *Id.*, ¶ 40.  Plaintiff chose not to get surgery

that day and was returned to the AVCF.  *Id.* at 16, ¶ 43.  Plaintiff struggled to reschedule his surgery.  *Id.* at 16-18, ¶¶ 45-56.

The third amended complaint asserts the following claims: (i) one claim of deliberate indifference in violation of the Eighth Amendment arising out of a delay in medical care between June and December 2018 against Desiree Vigil, Theodore Laurence, Jammie Fellhauer, Linda Paro, Lisa Hanks, Dr. Maul, Mountain Peaks Urology, P.C., Dr. Harrigan, Jennifer Harrigan, Ashley Reeder, Carley Davies, Brandy Kneski, Correctional Health Partners, Inc., Hall & Evans, LLC, Andrew Ringle, Laura Pearson, Kristin Ruiz, and Julie Tolleson; (ii) one claim of deliberate indifference in violation of the Eighth Amendment arising out of a January 31, 2019 physical exam and continued pain medication denial against Dr. Maul, Theodore Laurence, Vanessa Carson, Lindsay Gouty, and Dr. Harrigan; (iii) a medical malpractice claim arising out of the same January 31, 2019 physical exam, a surgery scheduled for February 22, 2019, and pain medication denial against Dr. Harrigan, Mountain Peaks Urology, P.C., Dr. Maul, Theodore Laurence, Vanessa Carson, Lisa Hanks, and Lindsay Gouty; and (iv) a Fourth Amendment claim against Vanessa Carson for theft of medical records in violation of HIPPA.  Docket No. 234 at 28-32, 43-44.  The list of claims does not include all claims listed in plaintiff's third amended complaint, Docket No. 234, because the third amended complaint contains claims that this Court did not grant plaintiff leave to assert.  *See* Docket No. 233 at 2.  The list of claims herein includes only those claims from the second amended complaint permitted by the Court's order accepting Judge Crews's

recommendation on plaintiff's motion for leave to amend.  *Id.*  Accordingly, the facts below will only discuss those facts required to decide the claims that remain.

## II. LEGAL STANDARD

### A.  Failure to Respond

Where a party fails to respond to a Rule 12(b)(6) motion, a district court may grant that motion either on its merits or as a sanction against the nonmoving party.  *See Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003).  Although a court may deem the motion uncontested, it may not grant the motion as a matter of course simply because the nonmoving party failed to respond.  *See id.*  Rather, the court "must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."  *Id.* at 1178.

In the alternative, a district court may dismiss a case with prejudice as a sanction against a nonmoving party for failing to respond.  *Id.*  In order to grant a motion to dismiss as a sanction, a court must undertake an explicit analysis of the three factors established in *Meade v. Grubbs*, 841 F.2d 1512, 1519–22 (10th Cir. 1988).  *See Issa*, 354 F.3d at 1177.  A court must consider (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; and (3) the culpability of the litigant.  *Id.*  Generally, however, dismissal is a severe sanction reserved for extreme cases.  *Id.*

### B.  Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . .

plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Id.* at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alterations omitted).

## III. ANALYSIS

### A. Deliberate Indifference

Plaintiff brings two claims for deliberate indifference in violation of his Eighth Amendment rights under 42 U.S.C. § 1983.  Docket No. 234 at 28-29.  Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety."  *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994)).  Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury" or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner

7

to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993); *Estelle*, 429 U.S. at 105.

Plaintiff must allege objective and subjective components to state a claim of deliberate indifference. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause." *Id.* (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)). The Tenth Circuit has held that "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (unpublished) (quoting *Sealock v. State of Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)). The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293). The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment." *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838). This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (unpublished) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)). "A prisoner may satisfy the subjective component by showing that

defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.  However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'"  *Id.* at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  Substantial harm includes "lifelong handicap, permanent loss, or considerable pain."  *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

### 1.  Consultation Delay

Plaintiff's first claim for deliberate indifference is based on the delay in plaintiff's receipt of a consultation from July 27, 2018 until January 31, 2019.  Docket No. 234 at 28.  Plaintiff brings this claim against the State Defendants, except for Lindsay Gouty, the MPU Defendants, the H&E Defendants, and CHP.  *Id.*

### a.  Objective Element

The State and MPU Defendants argue that plaintiff's claims for deliberate indifference should be dismissed against them because plaintiff has not alleged facts that demonstrate a medical need serious enough to meet the objective test.  Docket No. 240 at 5-7; Docket No. 249 at 4-6.  Plaintiff's consultation was to take place within thirty days of June 27, 2018.  Docket No. 234 at 9, ¶ 7.  His consultation did not take place until January 31, 2019.  *Id.* at 14, ¶ 33.  Plaintiff alleges that because of this delay, plaintiff suffered "permanent physical injury and intermediate injury."  *Id.* at 28.  Plaintiff does not explain what permanent injury occurred between June 2018 and January 2019.  Plaintiff was in pain while waiting for the consultation, but he does not allege that his condition worsened during that time, that any injury occurred as a result of the delay,

or that his medical need was sufficiently serious to require immediate medical attention. *See id.* at 9-14, ¶¶ 7-33; *Sealock*, 218 F.3d at 1210 (ruling "not every twinge of pain suffered as a result of delay in medical care is actionable" and that substantial harm can be a condition requires immediate medical attention or a delay in treatment that caused damage).  Plaintiff's allegation that he suffered "permanent physical injury," Docket No. 234 at 28, is conclusory and therefore insufficient to meet the objective test.

### b.  Subjective Element

Even if plaintiff could plausibly allege the objective element of a deliberate indifference claim, plaintiff fails to allege the necessary subjective element with regard to several defendants.  The subjective element of a deliberate indifference claim can be satisfied with a "showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition.  Even a brief delay may be unconstitutional."  *Mata*, 427 F.3d at 755.  The subjective element requires that a defendant knows and disregards an excessive risk to an inmate's health and safety. *See Callahan*, 471 F.3d at 1159.

Individual liability under § 1983, regardless of the particular constitutional theory, must be based upon personal participation.  *See Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997) (individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation) (citation omitted); *Mitchell v. Maynard, 80 F.3d 1433*, 1441 (10th Cir. 1996) (personal participation is an essential allegation in a civil rights action) (citation omitted); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983

10

claim."). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). A plaintiff must allege an affirmative link between the alleged constitutional violation and a defendant's participation. *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Plaintiff alleges that there was a conspiracy between all the defendants except Carson and Gouty to postpone plaintiff's consultation until after dispositive motions were completed in the *Tiona* Action. Docket No. 234 at 9-10, ¶¶ 9-10. Plaintiff does not, however, allege that the conspirators knew of an excessive risk to plaintiff's health. *See id.* Instead, plaintiff alleges that Vigil and Laurence knew he was in pain, *id.* at 10-11, 12-13, ¶¶ 12-14, 17, 20-28, and that he told Fellhauer he was in pain. *Id.* at 12, ¶ 19. Plaintiff's complaint contains no allegations that any of the other defendants knew of a risk to his health, knew that he did not have pain medication, or knew that he was in serious pain while waiting for a consultation. Plaintiff's failure to allege knowledge of risk to plaintiff's health or knowledge of plaintiff's pain by individual defendants is an independent reason to grant dismissal of his claim with regard to each defendant except Laurence, Fellhauer, and Vigil.

Additionally, plaintiff fails to allege facts sufficient to hold the entity defendants liable. A private company is not generally liable under § 1983 based only on the actions of an employee. "[A] private actor . . . 'cannot be held liable solely because it employs a

tortfeasor – or, in other words ... cannot be held liable under § 1983 on a *respondeat superior* theory.'" *Smedley v. Corrections Corp. Of Am.*, 175 F. App'x 943, 946 (10th Cir. 2005) (unpublished) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Plaintiff must allege "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.

Plaintiff does not allege any policies or customs of CHP that led to the delay in his medical treatment.  His only allegations assert that unnamed persons from CHP participated in a one-time conspiracy surrounding the *Tiona* Action. *See* Docket No. 234 at 9-10, ¶¶ 9-11.  This single instance is insufficient to plausibly allege a basis for entity liability as no officially adopted policy is identified.  Plaintiff's claim against Hall & Evans fails for the same reason.  Hall & Evans is a law firm for which entity liability also must be established.  The third amended complaint alleges no customs or practices of Hall & Evans sufficient to impose entity liability.  It only mentions Hall & Evans as participating in the *Tiona* Action conspiracy. *See id.*  There is no assertion of a practice or policy of the law firm sufficient to support entity liability of Hall & Evans.

### 2.  January 31, 2019 Consultation

Plaintiff's second claim of deliberate indifference arises from his examination on January 31, 2019 and is brought against State Defendants Dr. Maul, Laurence, Vanessa Carson, and Lindsay Gouty, and, one of the MPU Defendants, Dr. Harrigan. *Id.* at 29.  First plaintiff alleges that Dr. Harrigan caused an "unnecessary and wanton infliction of pain" when he examined plaintiff on January 31, 2019. *Id.*  Second, plaintiff

alleges that Dr. Maul, Laurence, and Carson denied plaintiff pain medication after the January 31 consultation. *Id.* Plaintiff also claims he was in extreme pain for two weeks afterwards. *Id.* Plaintiff does not state when he asked for pain medication from any of these defendants and does not allege any contact with these defendants in the two weeks after the examination. *See id.* at 14-15, ¶¶ 33-38.

### a. Examination by Dr. Harrigan

The examination by Dr. Harrigan caused plaintiff extreme pain and that, despite knowing that plaintiff was in extreme pain, Dr. Harrigan denied plaintiff any anesthetic. *Id.* at 14-15, ¶¶ 35-36. Dr. Harrigan stated that "[p]laintiff could either take the pain and suffer or he would not complete the examination." *Id.* at 15, ¶ 36. Plaintiff sufficiently alleges that this was an unnecessary and wanton infliction of pain sufficient to meet the objective test given that this claim asserts the pain was unnecessary and preventable. Dr. Harrigan argues that "[p]laintiff's complaints of pain were disproportionate to [Dr. Harrigan's] physical findings." Docket No. 240 at 10-11. He argues that de minimis injuries are insufficient. *Id.* at 6 (citing *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993)). The Tenth Circuit has ruled that "[t]he substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Mata*, 427 F.3d at 751 (internal quotation and citation omitted). Plaintiff has sufficiently alleged the objective element of a deliberate indifference claim as to the pain he experienced because of Dr. Harrigan's examination on January 31, 2019.

Regarding the subjective element, plaintiff alleges that Dr. Harrigan knew of and was indifferent to plaintiff's pain. Docket No. 234 at 15, ¶ 36. Plaintiff claims that Dr.

Harrigan did not administer pain medication and told plaintiff he would have to bear the extreme pain because Dr. Harrigan did not care that plaintiff was in pain. *Id.* at 15, 29, ¶ 36. The MPU Defendants argue that plaintiff's claim that Dr. Harrigan intentionally inflicted pain "does not pass the 'plausibility' standard," Docket No. 240 at 10 n. 5; however, plaintiff specifically alleges the time, place, actions, and speech that demonstrate Dr. Harrigan's mental state, which is enough to provide "fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (ellipsis omitted). The Court will deny defendants' motion with regard to Dr. Harrigan.

### b. Pain Medication

Plaintiff's claim against Dr. Maul, Laurence, Carson, and Gouty fails to plausibly allege the subjective element of a deliberate indifference claim. Plaintiff has not alleged that these defendants were aware of the pain plaintiff was in after his exam. *See* Docket No. 234 at 14-15, ¶¶ 33-38. A conclusory allegation that these defendants all denied plaintiff medication without reference to when they did so is insufficient to state a claim that each defendant was deliberately indifferent to plaintiff's pain caused by the examination or that each defendant personally participated in the denial of plaintiff's pain medication. Plaintiff does not allege that he requested any pain medication between January 31, 2019 and February 14, 2019 from any defendants except Dr. Harrigan. *See* 14-15, 26-27 ¶¶ 33-37, 85-88. Allegations of a denial of pain medication before the examination or after the time plaintiff was in considerable pain cannot support plaintiff's deliberate indifference claim as they are not connected to the substantial harm. Plaintiff does not claim that any defendants except Dr. Harrigan took

14

action to cause plaintiff pain between January 31 and February 14, 2019.  He also does not allege that any of those defendants knew he was in extreme pain after the examination, meaning they could not know he faced a serious risk of harm that these defendants ignored.  Plaintiff's allegations are insufficient to support a claim of deliberate indifference based on the pain he suffered during and after his consultation on January 31, 2019.  The Court will dismiss plaintiff's claim against each defendant except Dr. Harrigan.

### B.  Medical Malpractice

Plaintiff's third claim for medical malpractice is brought against State Defendants Maul, Laurence, Carson, Hanks, and Gouty and MPU Defendants Dr. Harrigan and MPU.  Docket No. 234 at 30.  Plaintiff alleges that events surrounding Dr. Harrigan's examination on January 31, 2019 constituted medical malpractice.  *Id*.  First*,* he alleges that Dr. Harrigan's failure to provide anesthetic during the examination and in the weeks after the examination was malpractice.  *Id.*  Next, plaintiff alleges that Dr. Harrigan and MPU improperly prepared for and did not provide plaintiff with an opportunity to provide informed consent for a surgery plaintiff was to undergo on February 22, 2019.  *Id.* at 30-31.  Plaintiff additionally claims that Dr. Harrigan recommended plaintiff undergo a surgery knowing "that additional surgeries would then be required at a later date."   *Id.* at 32.  Finally, he claims the State Defendants failed to provide plaintiff with pain medication after the examination.  *Id.*

Defendants assert that plaintiff's medical malpractice claim should be dismissed due to plaintiff's failure to satisfy the requirements of Colorado's certificate of review

statute, Colo. Rev. Stat. § 13-20-602.  Docket No. 249 at 16; Docket No. 240 at 12-13.

That statute provides: "[i]n every action for damages or indemnity based upon the

alleged professional negligence of . . . a licensed professional, the plaintiff's or

complainant's attorney shall file with the court a certificate of review" declaring that "the

attorney has consulted a person who has expertise in the area of the alleged negligent

conduct" and that "the professional who has been consulted . . . has concluded that the

filing of the claim, counterclaim, or cross claim does not lack substantial justification

within the meaning of section 13-17-102(4)."  Colo. Rev. Stat. § 13-20-602(1)(a),

(3)(a)(I)-(II).  Despite the statutory language referring to "plaintiff's attorney," the

requirements of Colo. Rev. Stat. § 13-20-602 apply equally "to civil actions alleging

negligence of licensed professionals filed by nonattorney pro se plaintiffs."  *Yadon v.*

*Southward*, 64 P.3d 909, 912 (Colo. App. 2002); *see also Hill v. SmithKline Beecham*

*Corp.*, 393 F.3d 1111, 1118 (10th Cir. 2004) (noting that the Colorado "certificate of

review requirement applies whether or not the plaintiff is represented by counsel").

Under Colorado law, the certificate of review requirement applies to all medical

malpractice cases except when "the subject matter of a medical malpractice action lies

within the ambit of common knowledge or experience of ordinary persons," *Teiken v.*

*Reynolds*, 904 P.2d 1387, 1389 (Colo. App. 1995); *see also Boigegrain v. Gilbert*, 784

P.2d 849, 850 (Colo. App. 1989) ("[E]xcept in clear and palpable cases, expert

testimony is necessary to establish the standards of acceptable professional conduct"),

and when the duty of care allegedly violated "arises from a general principle . . . which

. . . is a principle not peculiar to any one profession."  *Shinn v. Melberg*, No.

16

12-cv-01180-LTB-BNB, 2014 WL 334662, at *3 (D. Colo. Jan. 30, 2014) (quoting *Gorab v. Zook*, 943 P.2d 423, 427 n.5 (Colo. 1997)).

Plaintiff does not allege that the medical malpractice in this case was within the experience of ordinary persons or that the duty of care that he alleges was breached is not peculiar to any one profession for any of the bases of his medical malpractice claim. *See* Docket No. 234 at 30-32.  Plaintiff does state that inaccuracies on Dr. Harrigan's report after his examination could be seen by any "lay person," but goes on to state that malpractice in this instance was based on Dr. Harrigan's decision to recommend surgery.  *Id.* at 32.  He does not claim that an ordinary person could assess the duty of care required in recommending surgery.  *See id.*  Because plaintiff does not allege that this is the type of exceptional case in which a certificate of review is not required, the Court finds a certificate of review is required in this case.

Plaintiff filed a certificate of review stating that "two persons who have expertise in the area of . . . the alleged medical malpractice" concluded that plaintiff's claim "does not lack substantial justification within the meaning of section 13-7-102(4)."  Docket No. 266 at 1.  The State and MPU Defendants argue plaintiff's certificate is untimely based on the sixty-day limit provided by § 13-20-602(1)(a).  Docket No 240 at 12-13; Docket No. 249 at 16.  Plaintiff's second amended complaint added a claim of medical malpractice.  Docket No. 229-1 at 30-32; Docket No. 234 at 30-32.  The second amended complaint was served upon MPU and Dr. Harrigan on July 2, 2020.  Docket No. 122 at 1-4.  The second amended complaint was served upon Dr. Maul, Carson, Hanks, and Gouty on March 30, 2020, Docket No. 84, and on Laurence on April 2,

2020.  Docket No. 86.  Sixty days from the most recent service date, July 2, 2020, is August 31, 2020.  Plaintiff did not file a certificate of review until April 22, 2021.  Docket No. 266.  In his certificate of review, plaintiff claims that leave to file and serve a third amended complaint made "all prior versions of the complaint []moot."  Docket No. 266 at 2.  Plaintiff argues that his certificate of review was filed within 60 days of service of his third amended complaint.  *Id.*  However, under § 13-20-602(1)(a), "[t]he sixty days begin to run from the date the complaint first raising the predicate claim is served on the defendant."  *Blake v. United States*, No. 18-cv-00570-RBJ-SKC, 2020 WL 6482691, at *5 (D. Colo. Nov. 4, 2020) (citing *Karara v. Czopek*, 89 F.3d 850 (table), 1996 WL 330260, at *1 (10th Cir. 1996) (unpublished)).  Therefore, plaintiff had to file a certificate of review in this case sixty days after service of the second amended complaint, which was August 31, 2020 at the latest.  Plaintiff's certificate of review was filed over six months later.  "[F]ailure to file a certificate of review in accordance with []section [13-20-602] shall result in the dismissal of the complaint."  Colo. Rev. Stat. § 13-20-602(4).  Accordingly, the Court will dismiss plaintiff's malpractice claim.

## IV. CONCLUSION

Accordingly, it is

**ORDERED** that Defendant Correctional Health Partners' Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 243] is **GRANTED**.  It is further

**ORDERED** that Defendants Hall and Evans, LLC., Andrew Ringel and Laura Pearson's Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 245] is **GRANTED**.  It is further

**ORDERED** that State Defendants' Partial Motion to Dismiss Plaintiff's Third Amended Complaint [Docket No. 249] is **GRANTED**.  It is further

**ORDERED** that "MPU Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) C.R.S. § 13-20-602" [Docket No. 240] is **GRANTED** in part and **DENIED** in part.  It is further

**ORDERED** that plaintiff's first claim for deliberate indifference and third claim for medical malpractice are dismissed with prejudice against all defendants.  Plaintiff's second claim for deliberate indifference is dismissed as against defendants Dr. Maul, Theodore Laurence, Vanessa Carson, and Lindsay Gouty.  The claims that remain in this action are plaintiff's second claim for deliberate indifference, only against defendant Dr. Harrigan, and plaintiff's claim for a violation of his Fourth Amendment Rights against defendant Carson.  It is further

**ORDERED** that defendants Desiree Vigil, Theodore Laurence, Jammie Fellhauer, Linda Paro, Lisa Hanks, Lindsay Gouty, Mountain Peaks Urology, Dr. Maul, Jennifer Harrigan, Ashley Reeder, Carley Davies, Brandy Kneski, CHP, Hall & Evans, LLC, Andrew Ringle, Laura Pearson, Kristin Ruiz and Julie Tolleson are dismissed from this action.

DATED March 29, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge